UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | No. 1:20-CR-10136-DJC |
| | ) | |
| TARIK MUHAMMAD | ) | |

## MOTION BY DEFENDANT TARIK MUHAMMAD FOR RELEASE FROM DETENTION PENDING TRIAL

The above-named defendant, through his attorney, respectfully moves this Court to release him pursuant to the Bail Reform Act ("BRA") and upon such conditions that this Court deems reasonable and appropriate. 18 U.S.C. 3142; *United States v. Jessup*, 757 F.2d 378 (1st Cir. 1985); *United States v. Ploof*, 851 F.2d 7 (1st Cir. 1988). Mr. Muhammad was arrested on June 24, 2020, pursuant to a criminal complaint dated June 23, 2020, on the charge of conspiracy to possess with intent to distribute and distribute cocaine, in violation of 21 U.S.C. §846. He appeared before this Court on July 2, 2020, represented by predecessor counsel, for a hearing on the issues of probable cause and detention pending trial. At that appearance, the government indicated it was moving for detention based on the defendant's risk of flight and potential danger to the community, and that there was a presumption of Mr. Muhammad's detention because of the pending charge against him. Mr. Muhammad proceeded by proffer and did not have an evidentiary hearing. He conceded the issue of probable cause at the hearing and moved for release on conditions. The Court, Honorable Dein, J., presiding, found that the presumption of detention was rebutted and that Mr. Muhammad did not present a risk of flight, but ordered that Mr. Muhammad be held because no combination of conditions would ensure the safety of the community. The defendant now moves

for release on conditions and asserts that various change circumstances warrant reconsideration of his detention. He requests an evidentiary hearing. The Government objects to this motion.

I. <u>Evidence elicited during the initial detention hearing</u>

On July 2, 2020, a detention hearing proceeded by Government proffer, who also introduced several exhibits relevant to the charge against Mr. Muhammad. According to the Government, Mr. Muhammad called Mr. Kenji Drayton, who is also charged in this case, wherein "they agreed to do a drug deal." Det. Tr. p. 4-5 (Ex. A). The Government presented three pages of Title III line sheets in support of their argument that the purpose of Mr. Muhammad's and Mr. Drayton's phone call was to set up a meeting to exchange drugs. Ex. B, C, D (original exhibit #s 1, 2, 3). The Government went on to proffer that Mr. Muhammad and Mr. Drayton met and Mr. Drayton was in a car driven by Ken Kelly, wherein Mr. Muhammad was a passenger, for a short period of time and then left. The police followed the car driven by Mr. Kelly, pulled it over and arrested Mr. Muhammad. The Government proffered that they believed the original negotiation between Mr. Muhammad and Mr. Drayton was for 125g of cocaine, and they admitted a drug certificate which asserted 21.3g of cocaine was recovered from Mr. Muhammad.

With respect to its argument for detention, the Government cited the strength of its case, Mr. Muhammad's record and open case at the time, their belief that Mr. Muhammad was a gang member, and they likelihood that Mr. Muhammad was facing "a couple of years" in prison.

On July 8, 2020, the Court ordered that Mr. Muhammad be held pending trial. It found that Mr. Muhammad rebutted the presumption of detention and was not a flight risk, but that no combination of conditions could ensure the safety of the community. According to the order of detention, the Court based its decision on the following factors: strength of the evidence that Mr.

Muhammad was a drug distributor for Kenji Drayton, then-pending gun charges against him, and his criminal history.

II.     Additional relevant facts

After review of the discovery provided to date, defense counsel has learned the following: Over the course of 13 months, law enforcement obtained wiretaps for three different phones, one of which belonged to Kenji Drayton. *See* affidavit of counsel. Mr. Muhammad was in contact with Kenji Drayon on April 7, 2020, and April 8, 2020. Prior to April 7, 2020, there is no evidence, on wiretap or otherwise, that Mr. Muhammad spoke to Mr. Drayton. Mr. Muhammad is not alleged to have had contact with any other member of the alleged conspiracy in this case. Prior to April 8, 2020, when he was arrested, investigating officers were unaware of the existence of Mr. Muhammad.

On April 7, 2020, Mr. Muhammad called Mr. Drayton, who is his cousin. They said hello and Mr. Muhammad asked if they could talk sometime. Ex. E. Mr. Drayton suggests they meet up to talk the following day, and on April 8, 2020, they meet up in Mr. Kelly's car for a short period of time. Ex. B, C, D. Mr. Muhammad was arrested immediately after. Nothing in the wiretap recordings reveals a conversation whereby Mr. Drayton and Mr. Muhammad agree to exchange money for drugs, and there is no other evidence that Mr. Muhammad "was a distributor for Mr. Drayton," as the Government alleges. After his arrest, Mr. Muhammad is not recorded speaking to Mr. Drayton again, nor is he ever observed interacting with him after that date.

The charges out of the Roxbury Division of the BMC were dismissed on November 23, 2020, after the Commonwealth filed a nolle prosequi. Ex. F.

III.    Mr. Muhammad's Background

Mr. Muhammad was born and raised in Boston, MA, and has spent most of his life living locally. He has numerous family members who live in the area and is close with many of them. His father passed away just over a year ago and he has remained extremely close with his mother; they have spoken multiple times a week each week that he has been incarcerated pending trial in this case. Mr. Muhammad did not go to high school; however he did make efforts toward a GED at the community based "ROCA" in Boston. If released, Mr. Muhammad proposes to live with his godmother in Boston, whom he would assist and seek to qualify as a personal care attendant for.

IV. The COVID-19 Pandemic

The current CDC guidelines for remaining safe during the Covid-19 pandemic are to: stay six feet away from others, wear a mask if around others, and disinfect surfaces continuously. www.cdc.gov (last visited January 18, 2021). These things are impossible to do while incarcerated, and outbreaks of Covid-19 have burned through numerous detention facilities in Massachusetts and across the nation. Mr. Muhammad's health is at increased risk if he remains incarcerated. Particular to Mr. Muhammad's health risks, he has suffered from Asthma his entire life, and is currently being treated while he is incarcerated with a rescue inhaler twice a day. *See* medical records of defendant, Ex. G. He is at increased risk of serious illness or death if he should contract Covid-19 in jail, and other Courts have recognized that asthma is a factor that supports a defendant's release from custody. *See, e.g.*, *United States v. Gorai*, 2020 WL 1975372, at *3 (D.Nev., Apr. 24, 2020) (granting motion for reduction after finding "defendant's asthma falls squarely within the ambit of preexisting conditions that the CDC has unambiguously explained place him at greater risk of COVID-19"); *United States v. Norris*, No. 3:18-cr-243, No. 37 (D. Conn., Apr. 16, 2020) (granting reduction where only risk factor identified was asthma: "[Defendant] suffers from asthma and uses an Albuterol inhaler to treat his symptoms. . . . [H]is

medical condition and current conditions of confinement constitute extraordinary and compelling reasons to reduce his sentence."); *United States v. Wen*, 2020 WL 1845104 (W.D.N.Y., Apr. 13, 2020) (granting reduction for 48-year old defendant where only risk factor was history of asthma; noting *possible* positive case at institution); *United States v. Tran*, 2020 WL 1820520 (C.D. Cal., Apr. 10, 2020) (granting reduction for defendant serving a 15 year sentence for Hobbs Act robbery and possession of a machine gun where defendant suffered from asthma since childhood and was housed in a facility with an active COVID-19 outbreak); *United States v. Hernandez*, ___ F.Supp.3d ___, 2020 WL 1684062, at *3 (S.D.N.Y., Apr. 2, 2020) (granting reduction based on CDC guidance that persons with asthma are at high risk of serious illness if they contract the disease); *United States v. Gentille*, 2020 WL 1814158 (S.D.N.Y., Apr. 9, 2020) (same); *United States v. Lee*, ___ F.Supp.3d. ___, 2020 WL 2512415 2 (N.D.Cal., 2020) (granting reduction; noting the government did not dispute that moderate to severe asthma is a recognized risk factor); *United States v. Echevarria*, 2020 WL 2113604 (D.Conn., May 4, 2020) (granting reduction for 49-year old with history of asthma, though court noted other unidentified "chronic medical problems"). Sometimes courts cite asthma and other respiratory issues (like chronic bronchitis). *See, e.g., United States v. McCarthy*, 2020 WL 1698732, at *1 (D.Conn., 2020) (granting reduction for armed bank robber with COPD, asthma and other lung related ailments); *United States v. Gileno*, 2020 WL 1916773, at *5 (D.Conn., Apr 20, 2020) (granting where defendant suffers from "chronic asthma and other respiratory issues that put him at increased risk").

    V.    Mr. Muhammad should be released because there are conditions that will reasonably assure the safety of the community and Mr. Muhammad's appearance in court.

A defendant can be detained "[o]nly 'if, after a hearing pursuant to [§ 3142(f)], the judicial officer finds that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community.'" *United States v.*

*Ploof,* 851 F.2d 7, 9 (1st Cir. 1988) (quoting 18 U.S.C. § 3142(e)). As the Supreme Court held in *United States v. Salerno*, 481 U.S. 739 (1987), "[i]n our society liberty is the norm, and detention prior to trial . . .is the carefully limited exception." *Id*. at 755. This supposition of release pending trial is encapsulated in the BRA, 18 U.S.C. § 3142. The statute states that the Court "shall order" pretrial release, § 3142(b), except in certain narrow circumstances. Even if the Court determines under § 3142(c) that an unsecured bond is not sufficient, the Court "shall order" release subject to "the least restrictive further conditions" that will "reasonably assure" the defendant's appearance in court and the safety of the community. § 3142(c)(1) (emphasis added). Under this statutory scheme, "it is only a 'limited group of offenders' who should be detained pending trial." *United States v. Shakur*, 817 F.2d 189, 195 (2d Cir. 1987).

Though there is a statutory presumption of detention because Mr. Muhammad is charged with an offense under 21 U.S.C. § 846, that carries a potential penalty of 10 or more years, 18 U.S.C. § 3142(e)(3)(a), this presumption only requires that the defendant "establish a basis for concluding" that conditions of release will ensure his appearance and the safety of the community. *Jessup*, at 381 (quoting Senate Judiciary Report on proposed presumption). Mr. Muhammad has done that here. The Court found in its initial order on Mr. Muhammad's detention that he had rebutted that presumption of detention, and Mr. Muhammad maintains that it should continue to be rebutted.

During the initial detention hearing, the Government proffered that Mr. Muhammad was a drug distributor for Kenji Drayton. Since that hearing, defense counsel has reviewed voluminous discovery relating to this case, and asserts that the evidence against Mr. Muhammad, as it relates to the allegation of <u>conspiracy</u> is de minimis and will not sustain a conviction at trial. There is no allegation that Mr. Muhammad ever interacted with any of his co-defendants except Kenji Drayton, who is Mr. Muhammad's cousin. Over the course of a year and a half, Mr. Muhammad

was heard over wiretap recording speaking to his cousin on two days, and they did not speak about drugs or a drug transaction. The only evidence supporting the allegation that Mr. Muhammad was involved in a large-scale drug trafficking organization is that he was physically with Mr. Drayton in a car for a short period of time. After that car ride Mr. Muhammad was arrested and alleged cocaine was found on him. This is the extent of the allegation against Mr. Muhammad. The Government alleged in its original affidavit in support of a criminal complaint that Mr. Muhammad was a distributor for Mr. Drayton, however, nothing in the tens of thousands of pages of discovery support that allegation.

Defense counsel has calculated Mr. Muhammad's sentencing guidelines, which for a weight of under 50g of cocaine are at most 10-16 months, and Mr. Muhammad has already been incarcerated for seven months.

Therefore, based on the above-mentioned facts, Mr. Muhammad asserts there is a set of conditions that will assure his appearance and the safety of the community and that release is appropriate in his case. He proposes the following conditions:

1. GPS monitoring, with restrictions as this Court deems necessary.
2. An order to report to probation as directed.
3. An order to stay within the District of Massachusetts.
4. Abide by local, state, and federal laws.

Respectfully Submitted,

Tarik Muhammad

By his attorney:

/s/Erin Opperman

Erin Opperman
BBO: 601024

118 Pleasant St. #36<br>
Marblehead, MA 01945<br>
857-233-4602<br>
erin@oppermanlaw.com

<u>Certificate of Service</u>

I hereby certify that this document filed through the CM/ECF system will be sent electronically to the registered participants as listed on the NEF January 25, 2021.

<u>/s/ Erin Opperman</u>

Counsel certifies pursuant to Local Rule 7.1 that it has attempted to resolve or narrow this issue prior to filing.

<u>/s/ Erin Opperman</u>