UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | No.  1:20-CR-10136 |
| | ) | |
| TARIK MUHAMMAD, | ) | |
| | ) | |
| Defendant. | ) | |

### SENTENCING MEMORANDUM OF THE UNITED STATES

The United States submits this sentencing memorandum to assist the Court in imposing a fair, reasonable, and sufficient sentence in the case against Tarik Muhammad.  Muhammad faces sentencing following his guilty plea to Count One of the Indictment charging him with conspiracy to distribute and possess with intent to distribute cocaine, in violation of 21 U.S.C. § 846.  For the reasons set forth herein and those to be advanced at the sentencing hearing, the government respectfully requests that the Court sentence Muhammad to ***24 months imprisonment to be followed by three years of supervised release***.[1]  Such a sentence is warranted given the nature and circumstances of the offense, the history and characteristics of the defendant, and the purposes underlying sentencing set forth in 18 U.S.C. § 3553(a).

### I.    The Nature and Circumstances of the Offense Support the Government's Proposed Sentence[2] as well as the Government's Estimated Drug Weight Calculation

The Drug Enforcement Administration, Boston Police Department, and other law local law enforcement agencies identified Muhammad as a drug customer and distributor within Kenji

---

[1] The defendant pleaded guilty pursuant to a plea agreement under Fed. R. Crim. P. 11(c)(1)(C). Under the provisions of that agreement, the defendant likewise has agreed to a sentence of 24 months imprisonment to be followed by 36 months' supervised release.

[2] The United States relies upon the offense conduct set forth in the Abbreviated Presentence Report (PSR).

Drayton's drug-trafficking organization during a twenty-month investigation.  Specifically, over a multi-day period in early April 2020, law enforcement intercepted calls between Kenji Drayton and Hakeem Drayton (Muhammad's brother), and ultimately, between Drayton and Muhammad in which Muhammad coordinated a drug deal with Drayton in the vicinity of Muhammad's mother's house – conveniently located mere blocks away from one of Drayton's known drug distribution locales at 519 Harrison Avenue.  On the day of the deal, law enforcement intercepted calls between Muhammad and Drayton, surveilled them together in the area discussed on the calls, and saw both enter a heavily tinted Volkswagen registered to a known St. Joseph's gang member.  The car did a brief ride to nowhere before Drayton exited the car.  Moments later, law enforcement stopped the car and searched its occupants, including Muhammad.  On feeling a bulge in Muhammad's outer rear area consistent with narcotics, law enforcement elected to transport Muhammad to the police station for a strip search given Muhammad's then confrontational demeanor and their then public location (a sidewalk).

During the police transport, law enforcement saw Muhammad throw himself to the ground and thrash about in a manner believed to the officers to be consistent with someone trying to ingest something on the ground.  On arriving at the station, law enforcement found powder on Muhammad's clothing, hands, knees, and portions of his face.  During a strip search, officers recovered a ripped plastic baggie containing white residue.  While cleaning up the transport wagon and Muhammad's clothing, law enforcement recovered over 20 grams of a white substance subsequently confirmed to be cocaine.

The intercepted calls between Muhammad and Drayton, corresponding surveillance of the two meeting in a manner consistent with a drug deal, and the subsequent recovery of cocaine powder from Muhammad's clothing and the rear transport, made clear that Muhammad engaged

in drug trafficking.  Further, moments after the deal occurred, law enforcement intercepted calls between Drayton and Hakeem Drayton (Muhammad's brother) and Gail Drayton (Muhammad's mother) in which Drayton expressed concern about law enforcement having possibly caught Muhammad and the potential risk to which Drayton had been exposed by virtue of his meetup with Muhammad.  The evidence overwhelmingly reflects the serious nature of the offense to which Muhammad has pleaded guilty – drug conspiracy.  *See United States v. McKenney*, 450 F.3d 39, 44 (1st Cir. 2006) ("Congress considers the inchoate offenses of attempt and conspiracy, even conspiracy without an overt act, to be just as serious as the federal substantive drug offenses which they contemplate."); *United States v. Clifford*, 2021 WL 217600, at *7 (D. Me. Jan. 21, 2021) ("[I]t does not follow [that] the crime of possession of large quantities of cocaine for distribution is not harmful to the public."); *see also United States v. Cortes-Caban*, 691 F.3d 1, 44-45 (1st Cir. 2012) (J. Torruella, dissenting) (observing that object and intent of Controlled Substances Act was to control drug abuse and drug trafficking).

## II.   <u>History and Characteristics of the Defendant</u>

The defendant's criminal history is highly troubling.  He is estimated to be a Criminal History Category III based on his prior convictions, one of which occurred in 2013 when the defendant was a juvenile and attempted to murder someone with a knife.  The facts of that assault, which are set forth in the PSR, are disturbing and show Muhammad's proclivity for antagonism and violence – even at a young age.

Muhammad's criminal record shows no deterrence or respect for the law.  While incarcerated on the 2013 stabbing, the defendant had ***eight*** disciplinary reports.  Following imprisonment on his armed assault to murder conviction, the PSR indicates that multiple violation notices and warrants were filed, and his period of probation was extended multiple

times.  Muhammad's probation ultimately was revoked, followed by additional disciplinary reports while imprisoned.  Muhammad's disciplinary reports included engaging in inmate fights, refusing orders, participating in disruptive conduct, smoking marijuana, engaging in unit disturbances, gang-related tagging, and other offenses.

Muhammad was released from jail the end of February 2020 –less than two months later, he was doing a drug deal with Kenji Drayton in April 2020.  And in May 2020, Muhammad was arrested for being in the same Volkswagen with the same St. Joseph's gang member. Muhammad fled from law enforcement after police found a gun in that gang member's car.

Even while this case was pending, the defendant has produced an extensive disciplinary record consisting of over one hundred pages of conduct ranging from assaulting/fighting inmates to engaging in disruptive conduct, refusing orders, and exposing himself and masturbating in the presence of a female guard.  Throughout that same period where Muhammad was repeatedly non-compliant with authority, he multiple times sought his release in this case – all while refusing to show the government or Court any meaningful intent to abide by authority or respect the law.  To this day, Muhammad troublingly still shows himself to be defiant – challenging probation's efforts to set him onto a structured path for rehabilitation and insisting on residing in locations in the heart of gang territory and in residences where he previously lived during times when he had trouble with law enforcement.  Even at his Rule 11 hearing, Muhammad appeared to have given little to no thought to what, if anything, he intended to do with his life following his incarceration period.  In many ways, Hakeem Drayton summed Muhammad up best when encouraging Drayton not to associate with him, describing Muhammad as a "heat master" who has "no sense of direction."  Even individuals engaging in illegal conduct did not want to associate themselves with Muhammad.

Muhammad's criminal history and the conduct in this case (including pending trial) raises concerns about the danger he presents – not only to members of the public, but to himself – if he does not change his ways and turn his life around.

### III.  The Need for a Sentence to Afford Adequate Deterrence, Promote Respect for the Law, and Protect the Public Further Supports the Government's Proposed Sentence

The various factors under 18 U.S.C. § 3553(a) further support the government's sentencing recommendation of 24 months imprisonment and 36 months of supervised release. Prior arrests, convictions, prison sentences, violations and revocations of probation have not been enough to deter Muhammad from engaging in criminal activity.  The need to promote respect for the law and protect the public demands a meaningful sentence.  The government's recommended sentence of 24 months is fair – it constitutes a mid-Guidelines sentence while acknowledging the seriousness of the defendant's conduct, the scope of his role in the overall charged offense, and the nature of his criminal history.

Lastly, to further ensure the public's protection, to give this Court a greater ability to respond to potential future misconduct by the defendant, and to give the defendant appropriate structure when reintegrating into society, the government requests that along with a meaningful period of incarceration, the Court impose a three-year term of supervised release.  A period of three years' supervised release will both protect the public and comply with the other sentencing goals articulated under 18 U.S.C. § 3553(a).

## <u>Conclusion</u>

For the reasons above and those to be advanced at the sentencing hearing, the government respectfully requests a sentence of ***24 months imprisonment to be followed by three years of supervised release***.

Respectfully submitted,

JOSHUA S. LEVY
Attorney for the United States,
Acting under Authority Conferred
by 28 U.S.C. § 515

By:    <u>*/s/ Kaitlin R. O'Donnell*    </u>
Kaitlin R. O'Donnell
Timothy E. Moran
Date:  June 20, 2022                 Assistant United States Attorneys

## <u>CERTIFICATE OF SERVICE</u>

I, the undersigned, hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF).

*/s/ Kaitlin R. O'Donnell*
Kaitlin R. O'Donnell
Assistant U.S. Attorney

Date: June 20, 2022